**ANTHONY W. ROMANO, SR., Individually and as Administrator/Executor of the Estate of ANTHONY R. ROMANO, JR., Petitioner**

v.

**V.I. GOVERNMENT HOSPITALS & HEALTH FACILITIES CORP., Respondent, on behalf of ROY LESTER SCHNEIDER HOSPITAL, MYRA KEATING SMITH COMMUNITY HEALTH CENTER, SCHNEIDER REGIONAL MEDICAL CENTER, ROBERT C. OELHAF, M.D., JEFFREY GULLER, M.D., THOMAS O. BREWER, M.D., LUIS AMARO, M.D., JESSICA WILSON, M.D., JOHN DOE PHYSICIANS 1-10, JANE DOE PHYSICIANS 11-20, JOHN and JANE DOE NURSES 21-30, and their respective agents, servants, ostensible agents, employees, resident physicians, interns, nurses, technicians, therapists, and other personnel, Putative Defendants**

Case No. ST-14-MC-021

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

May 28, 2014

K. GLENDA CAMERON, ESQ., Christiansted, St. Croix, USVI, *For the Petitioner.*

DUNSTON, *Judge*

## MEMORANDUM OPINION

(May 28, 2014)

Pending before the Court is Petitioner Anthony W. Romano, Sr.'s April 11, 2014, Miscellaneous Petition for Disclosure of Medical Records.[1] For the following reasons, Romano's Petition shall be denied.

## ANALYSIS

Petitioner, the administrator of the Estate of Anthony R. Romano, Jr., seeks a court order compelling V.I. Government Hospitals and Health Facilities Corporation to produce medical records related to the death of Romano, Jr., on December 4, 2013. Petitioner seeks the medical records to determine whether to commence suit pursuant to the Virgin Islands Tort Claims Act against Putative Defendants for medical malpractice related to Romano, Jr.'s death. To date, Petitioner indicates that efforts to obtain Romano, Jr.'s medical records have been unsuccessful because Roy Lester Schneider Hospital has stated that the records have been "misplaced."

The Court is sympathetic to Petitioner's situation because it appears that Petitioner may be caught in a classic "catch-22." To date, Petitioner has been unable to informally obtain the decedent's medical records, and without decedent's medical records, Petitioner may have difficultly

---

[1] Respondent and Putative Defendants have not responded to Petitioner's Motion. Of note, the Petition was served on the Governor and the Attorney General of the U.S. Virgin Islands.

alleging sufficient facts[2] to support an action for medical malpractice against the Putative Defendants on behalf of decedent's estate.[3] Once a plaintiff commences an action pursuant to FED. R. CIV. P. 3 that is sufficient to survive a motion pursuant to FED. R. CIV. P. 12(b)(6), the plaintiff may commence discovery pursuant to FED. R. CIV. P. 26-37.[4] While the Federal Rules of Civil Procedure do provide limited instances where a party may perpetuate testimony prior to filing an action[5] or where a nonparty to a suit may be compelled to produce documents,[6] neither of these circumstances appears to permit a party to seek pre-action disclosure of records from potential defendants. Some States, such as New York[7] and Florida,[8] have dealt with this quandary by enacting specific statutes that would permit Courts to compel pre-action disclosure from potential defendants in medical malpractice cases. Unfortunately for the Petitioner, the U.S. Virgin Islands has no such statute. Absent specific statutory authority, the Court must determine whether (1) the Superior Court may exercise jurisdiction over this matter; and (2) whether this action may be maintained pursuant to the common law of the Virgin Islands.

## I. Original Jurisdiction

■ Pursuant to 4 V.I.C. § 76, the Superior Court has "original jurisdiction in all civil actions," including wrongful death actions[9] against

---

[2] *See, e.g., Etienne v. Oyake*, 347 F. Supp. 2d 215, 219 (D.V.I. 2004) (describing the sufficiency of pleading requirements under FED. R. CIV. P. 8 such that a plaintiff may commence discovery); *see also* FED. R. CIV. P. 11; 27 V.I.C. § 166ia.

[3] *Cf. Application of Taylor*, 540 N.Y.S.2d 162, 163 (N.Y. Sup. Ct. 1989) (describing a similar "catch-22" situation where a Petitioner sought pre-action disclosure under New York law).

[4] In the absence of local rules to the contrary, the Federal Rules of Civil Procedure are made applicable to the Superior Court pursuant to SUPER. CT. R. 7.

[5] *See* FED. R. CIV. P. 27(a).

[6] *See* FED. R. CIV. P. 34(c); FED. R. CIV. P. 45.

[7] *See* N.Y. C.P.L.R. 3102 (McKinney) ("Before an action is commenced, disclosure to aid in bringing an action, to preserve information or to aid in arbitration, may be obtained, but only by court order."); *Application of Taylor*, 540 N.Y.S.2d 162 (permitting pre-action disclosure to determine identity of potential defendants).

[8] *See* FLA. R. CIV. P. 1.650 (Medical Malpractice Presuit Screening Rule) (providing that if a party files a notice of intent to initiate litigation, the party may also seek pre-action disclosure of documents and records); FLA. STAT. ANN. § 766.203 (West); *see generally* 12 A.L.R.5th 577 (1993); 41 C.J.S. Hospitals § 46 (2014).

[9] *See* 4 V.I.C. § 76; 5 V.I.C. §§ 76, 77.

the Virgin Islands Government Hospitals and Health Facilities Corporation,[10] subject to certain statutory limitations.[11] FED. R. CIV. P. 3 states that "[a] civil action is commenced by filing a complaint with the court." But here, a Complaint has not been filed. Further, while Petitioner indicates that he intends to file suit, as evidenced by his notice of intent to sue served on the Governor of the Virgin Islands and the Attorney General of the Virgin Islands, Petitioner does not indicate with certainty when the action will be commenced. As a result, the question arises whether Petitioner has established an actual case and controversy:

> The basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, with a definite and concrete dispute, and not one which is hypothetical or abstract. Justiciability concerns not only the standing of litigants to assert particular claims in . . . court but also the appropriate timing of judicial intervention, which requires a live controversy.[12]

This seems to be an issue of first impression in the Virgin Islands; and it is not immediately apparent whether the Court may provide redress in the absence of statutory or clear common law authority.

▊ Nevertheless, while the determination of whether a party presents an actual case or controversy has traditionally established whether a court has jurisdiction, the Supreme Court of the Virgin Islands recently held that they

> . . . have recognized those doctrines as judicially-imposed restraints [rather than restraints on jurisdiction] on [the Court's] . . . authority because Virgin Islands courts are not Article III courts and thus not subject to the same constitutional constraints on jurisdiction.[13]

---

[10] *See* 19 V.I.C. § 244.

[11] *See* 27 V.I.C. § 166 *et seq.*; 33 V.I.C. § 3401 *et seq. See also Richardson v. Knud Hansen Mem'l Hosp.*, 744 F.2d 1007, 1009 (3d Cir. 1984) (". . . a malpractice claimant against the Government must comply with the provisions of the Virgin Islands Tort Claims Act as well as the provisions of the Virgin Islands Health Care Provider Malpractice Act . . .").

[12] 32A AM. JUR. 2D Federal Courts § 590 (2014).

[13] *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558 (V.I. 2012) (holding that justiciability considerations such as standing and mootness should be treated as a "claims processing rule," and are subject to waiver if the opposing party fails to raise it as a defense).

This holding suggests that the Superior Court may exercise jurisdiction over a matter even in the absence of an actual case and controversy. Despite this holding, the case and controversy requirement has been repeatedly incorporated into Virgin Islands jurisprudence as a judicially-imposed restraint because[14] it is "prudential"[15] for the Court to "control"[16] and

> limit the business of . . . [the] court [. . .] to questions . . . in a form historically viewed as capable of resolution through the judicial process, and . . . [so that the] court will not intrude into areas committed to other branches of the government.[17]

Thus, absent a compelling argument to the contrary, the Court may, *sua sponte* or upon a motion of the opposing party, dismiss a matter where the party has not established a clear case and controversy.

Here, however, despite the uncertainty whether the Petition presents a sufficient actual case and controversy, (1) the Court finds it has jurisdiction pursuant to 4 V.I.C. § 76 and 19 V.I.C. § 244;[18] and (2) the Court will, in its discretion, consider the matter on the merits because the Court finds it appropriate in this case to treat the Petition as a common law equitable action known as a "bill of discovery."[19]

## II. Equitable Bill of Discovery

■ The "bill of discovery" is a centuries-old independent common law action in equity for discovery which was utilized by the courts as the primary tool to compel discovery prior the enactment of the Federal Rules

---

[14] *See, e.g., V.I. Gov't Hosp. and Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 280 (V.I. 2008) (citing *Reno v. Catholic Social Servs, Inc.*, 509 U.S. 43, 57, n.18, 113 S. Ct. 2485, 125 L. Ed. 2d 38 (1993) ("Although the Superior Court is not an Article III court, at least some aspects of Article III's requirement that a court only rule on actual cases and controversies have been incorporated into Virgin Islands jurisprudence.").

[15] *Benjamin*, 56 V.I. at 564.

[16] *Id.*

[17] 32A AM. JUR. 2D Federal Courts § 590.

[18] While the Court recognizes that 27 V.I.C. § 166i imposes jurisdictional limitations in medical malpractice actions, since no action for medical malpractice has been commenced here, it is the Court's view that these limitations do not apply at this stage. *See Brady v. Cintron*, 55 V.I. 802 (2011).

[19] *See Harris v. Garcia*, 2010 V.I. Supreme LEXIS 3 (V.I. Jan. 14, 2010) (highlighting that the function and purpose of the motion dictates which rules apply).

·of Civil Procedure in 1938.[20] A review of Virgin Islands jurisprudence reveals that the bill of discovery has rarely been[21] utilized in this jurisdiction, likely because, consistent with the practice of other jurisdictions, the Federal Rules of Civil Procedure largely superseded the original purpose and scope of the bill of discovery.[22] Nevertheless, the bill of discovery has not become obsolete, but rather, at a court's discretion,[23] its use has been limited to the rare occasion where no other discovery rule provides an adequate mechanism for relief. For instance, while traditionally the bill was treated as ancillary to a primary cause of action,[24] it has since been expanded by judicial action to compel the inspection of a nonparties' land[25] or to compel a nonparty to provide the identity of unknown defendants.[26]

█ Because it appears that no binding precedent exists in this jurisdiction regarding an equitable bill of discovery that seeks pre-filing disclosure of documents and records from a potential putative defendant in the medical malpractice context, pursuant to *Government of the Virgin Islands v. Connor*,[27] the Court must undertake a *Banks* analysis. A *Banks* analysis consists of a balancing of the following three non-dispositive factors:

(1) whether any Virgin Islands courts have previously adopted a particular rule;

(2) the position taken by a majority of courts from other jurisdictions; and

---

[20] See *Lubrin v. Hess Oil V.I. Corp.*, 109 F.R.D. 403, 405 (D.V.I. 1986).

[21] See *id.*; *Etienne v. Oyake*, 347 F. Supp. 2d 215 (D.V.I. 2004).

[22] See *JM Family Enterprises, Inc. v. Freeman*, 758 So. 2d 1175, 1176 (Fla. Dist. Ct. App. 2000) (noting that fear of filing a frivolous lawsuit under Florida law is insufficient to establish a need for a bill of discovery).

[23] See *Berger v. Cuomo*, 644 A.2d 333, 337 (Conn. 1994) (noted that a bill of discovery should be granted in the Court's discretion unless some "well founded objection" exists).

[24] See, e.g., *id.*

[25] See, e.g., *Lubrin*, 109 F.R.D. 403.

[26] See *id.*; *Brown v. McDonald*, 133 F. 897 (3rd Cir. 1905).

[27] 60 V.I. 599 (V.I. 2014) (holding that the Superior Court may be summarily reversed if it does not perform a *Banks* analysis in the first instance).

(3) most importantly, which approach represents the soundest rule for the Virgin Islands.[28]

In *Etienne v. Oyake*[29] the Appellate Division of the District Court of the Virgin Islands held that when the Federal Rules of Civil Procedure outline "specific procedures . . . for obtaining information from another party in a pending action," a party may not resort to an equitable bill of discovery.[30] However, in *dicta*, the *Etienne* Court also recognized that

> some jurisdictions continue to permit independent equitable actions to compel information from non-parties which may otherwise be unobtainable under the discovery rules.[31]

This *dicta* suggests that a party is not foreclosed from pursuing an action for an bill of discovery when neither the Federal Rules of Civil Procedure or local rules provide for redress.[32] In fact, this suggestion is consistent with the advisory committee notes regarding FED. R. CIV. P. 34. While FED R. CIV. P. 34 can be used to compel *parties* to an action to produce documents or permit entry onto land for inspection and other purposes, the advisory committee recognizes that FED. R. CIV. P. 34 "does not preclude independent actions for discovery against persons not parties," but declines to adopt a specific procedural rule for that purpose.[33] As a result, while a bill of dis-

---

[28] *Simon v. Joseph*, 59 V.I. 611 (V.I. 2013) (interpreting *Banks*).

[29] 347 F. Supp. 2d 215 (D.V.I. 2004).

[30] *Id.* at 221.

[31] *Id.*

[32] *Id.*; *cf. Adventist Health Sys./Sunbelt, Inc. v. Hegwood*, 569 So. 2d 1295, 1296 (Fla. Dist. Ct. App. 1990) (holding that in the medical malpractice context, a pure bill of discovery against a putative defendant survives the enactment of a medical malpractice statute that permits informal discovery).

[33] FED. R. CIV. P. 34(c) Advisory Committee Notes (1970) ("Rule 34 as revised continues to apply only to parties. Comments from the bar make clear that in the preparation of cases for trial it is occasionally necessary to enter land or inspect large tangible things in the possession of a person not a party, and that some courts have dismissed independent actions in the nature of bills in equity for such discovery on the ground that Rule 34 is preemptive. While an ideal solution to this problem is to provide for discovery against persons not parties in Rule 34, both the jurisdictional and procedural problems are very complex. For the present, this subdivision makes clear that Rule 34 does not preclude independent actions for discovery against persons not parties."); the Advisory Committee notes that it declines to adopt a specific procedural rule because of the jurisdictional problems it may give rise to in the federal system. *See, e.g., Reilly Tar & Chemical Corp. v. Burlington N. R. Co.*, 589 F. Supp. 275 (D. Minn.

covery has not necessarily been explicitly adopted in this jurisdiction, the Court finds the *Etienne* Court's *dicta* persuasive under the first *Banks* factor.[34]

Under the second *Banks* factor, a majority of jurisdictions have taken a similar approach as that of the *Etienne* Court when considering a bill of discovery — limiting bills of discovery to instances where no other remedy at law exists.[35] However, the practical application of a bill of discovery is particular to each jurisdiction. The underlying reason for this apparent disparity in application is not only due to the rarity of bills of discovery, but also because local state statutes regarding pre-action disclosure vary widely.[36] Thus, Courts have applied bills of discovery in nuanced situations when necessary to effectuate proper and equitable relief. For instance, in *Adventist Health System v. Hegwood* the District Court of Appeal of Florida found that a pure bill of discovery was appropriately granted where an individual specifically sought to depose witnesses prior to filing a medical malpractice complaint because the local informal statutory discovery laws would only explicitly permit the party to obtain records and documents.[37] However, in *JM Family Enterprises, Inc. v. Freeman*, the District Court of Appeal of Florida limited the *Hegwood* holding to the medical malpractice context, noting

---

1984) (dismissing on the basis of a lack of diversity jurisdiction). Here, however, it appears no jurisdictional issues arise because, as the Supreme Court of the Virgin Islands has held, we are not bound by the same constitutional requirements that affect a federal court's jurisdiction because the Superior Court is not an Article III court. *See Benjamin*, 56 V.I. 558. Nevertheless, when considering a bill of discovery, a court may also run afoul of issues with personal jurisdiction, but that does not appear to be the case here. *See generally* RULE 34(C) AND DISCOVERY OF NONPARTY LAND, 85 Yale L.J. 112, 117 (1975).

[34] The Court need not address whether nonparties may be compelled to produce documents and records pursuant to FED. R. CIV. P. 34(c) and FED. R. CIV. P. 45. Specifically, FED. R. CIV. P. 34(c) and FED. R. CIV. P. 45 do not apply here because no suit has been commenced. *Compare Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1407 (5th Cir. 1993) (finding equitable bill of discovery survives enactment of FED. R. CIV. P. 34(c) and FED. R. CIV. P. 45) *with Franklin v. Turner*, 1992 U.S. Dist. LEXIS 14791 (D. Or. Sept. 25, 1992) (finding equitable bill of discovery unnecessary). Similarly, the Court also need not address the interplay of a bill of discovery with FED. R. CIV. P. 27. However, the *dicta* in *Etienne* suggests that where any Federal Rule of Procedure applies, a bill of discovery would not be an appropriate exercise of the Court's equitable powers. *See Etienne*, 347 F. Supp. 2d at 220-21.

[35] *See generally* 37 A.L.R.5th 645 (1996) (collecting cases).

[36] *See* n.7, 8, *supra*.

[37] 569 So. 2d at 1296.

that the use of a bill of discovery should be "relatively rare."[38] The rare and unique application of a bill of discovery in various jurisdictions does not necessarily imply that it should not be adopted here. To the contrary, a bill of discovery is an equitable remedy that, when properly made, has survived in a majority of jurisdictions in one form or another.[39]

Under the final *Banks* factor, the Court finds that a limited application of a bill of discovery in the medical malpractice context where a party has no remedy at law is in accordance with local public policy to provide "relief in accordance with the broad principles of right and justice in cases where the restrictive technicalities of the law prevent the giving of relief."[40] Further, permitting limited relevant pre-filing disclosure in the medical malpractice context is in accordance with the underlying purpose of the Medical Malpractice Act to limit frivolous medical malpractice claims as well as the underlying purpose of the Tort Claims Act to ensure that "tort actions against the Government are filed promptly and prosecuted diligently."[41] Considering that all three *Banks* factors weigh favorably in the adoption of a pure bill of discovery, the Court finds that a bill of discovery is a proper reflection of the common law of this jurisdiction.

### III. The Court's adoption of the equitable bill of discovery is limited to the facts presented in Romano, Sr.'s Petition.

■ The Court's adoption of the equitable bill of discovery here is a clear exercise of its concurrent authority with the Supreme Court to shape the common law absent binding precedent.[42] While it appears that a bill of discovery has never been considered by this Court in an instance where a petitioner seeks relevant records from a potential putative defendant, such an application is a logical evolution of the bill of discovery in this jurisdiction, particularly considering the Virgin Islands has not adopted

---

[38] 758 So. 2d at 1176.

[39] 37 A.L.R.5th 645 (collecting cases) ("Exercising their equitable powers, a majority of courts which have addressed the issue have recognized the continued existence of the independent action for discovery known as the equitable bill of discovery, to authorize discovery outside of the rules in limited situations for use in a pending action or an action about to be brought.").

[40] *Hegwood*, 569 So. 2d at 1298.

[41] *Pickering v. David*, 22 V.I. 105, 111 (Terr. V.I. 1986).

[42] *See Connor*, 60 V.I. at 605.

any statutes governing informal pre-filing disclosure in the medical malpractice context.

■ ■ However, this holding does not give a green light to fishing expeditions in every type of civil action.[43] Similar to the nuanced application of the bill of discovery in other jurisdictions, the Court's holding here is limited to the medical malpractice context because of the high threshold under Virgin Islands law for commencement of a medical malpractice suit against the Government of the Virgin Islands. Not only must a potential plaintiff comply with the procedural requirements of the Medical Malpractice Act[44] and the Tort Claims Act,[45] which both limit the Court's jurisdiction,[46] but 27 V.I.C. § 166i (a) explicitly provides that

> [a]ny health care provider . . . may file a counterclaim against a person filing a complaint . . . alleging that the complaint filed is frivolous. If the court finds that the complaint is frivolous it may award to the successful party court costs, including reasonable attorneys fees.

Additionally, pursuing a medical malpractice claim is a highly specialized, costly civil action, as exemplified by the Medical Malpractice Act's overall goal of reducing litigation and eliminating frivolous claims. By permitting equitable actions for bills of discovery in the medical malpractice context, the Court shall further reduce needless litigation before Virgin Islands Courts. Finally, the Court emphasizes that any petition for a bill of discovery will be strictly scrutinized to ensure that the bill is granted in the Court's discretion *only* when the petitioner has shown it has no alternative adequate remedy at law.

### IV. The Petition does not comply with all the elements necessary to sustain a bill of discovery.

■ Despite the Court's finding that a "bill of discovery" is a proper reflection of the common law of this jurisdiction, the Court shall deny Romano, Sr.'s Petition because it does not allege sufficient facts, supported by affidavit, establishing the underlying basis for the Petition. Nor does it establish that Petitioner has no adequate remedy at law.

---

[43] *See JM Family Enterprises, Inc.*, 758 So. 2d 1175.

[44] 27 V.I.C. § 166a *et seq.*

[45] 33 V.I.C. § 3408 *et seq.*

[46] *See Brady*, 55 V.I. 802.

■ First, as the Supreme Court of Connecticut clearly outlined in *Berger v. Cuomo*, in order

> [t]o sustain the bill, the petitioner must demonstrate that what he seeks to discover is material and necessary for proof of, or is needed to aid in proof of or in defense of, another action already brought or about to be brought. . . . A [petitioner] . . . must [also] be able to demonstrate good faith as well as probable cause that the information sought is both material and necessary to his action.[47]

Here, the Petitioner does not provide an affidavit outlining sufficient underlying facts giving rise to the Petitioner's belief that Respondent or Putative Defendants are in possession of relevant medical documents that would tend to show that medical malpractice contributed to Romano, Jr.'s death.[48]

■ Second, consistent with *Etienne*, "the petitioner must also show that he has no other adequate means of enforcing discovery of the desired material."[49] Here, the Petition does not demonstrate with particularly that Petitioner has exhausted all non-judicial remedies prior to filing his Petition. For instance, Petitioner does not demonstrate that he has petitioned the Medical Malpractice Action Review Committee, which has the power, in the exercise of its duties under the Medical Malpractice Act, to "request all necessary information from health care providers including hospitals . . . ."[50] Petitioner merely makes the unverified assertion that the hospital has failed to provide the records after repeated attempts. Petitioner also represents that he has been told that the records have been "misplaced."

For the foregoing reasons, Petitioner's Miscellaneous Petition for Disclosure of Medical Records shall be denied without prejudice.

---

[47] 644 A.2d at 337.

[48] Of note, while Romano, Sr. alleges he has been appointed the administrator of Romano, Jr.'s estate, and thereby has the authority to obtain Romano, Jr.'s medical records, he has provided no evidentiary proof of such authority with his Petition.

[49] *Berger*, 644 A.2d at 337. The Court recognizes that the *Berger* Court holds that the availability of other remedies does not necessarily preclude an action for a bill of discovery. However, the *Etienne* Court was explicit in its holding that where the Federal Rules of Civil Procedure provide an adequate remedy, an action for a bill of discovery is not appropriate.

[50] 27 V.I.C. § 166i(d)(2).